Filed 9/18/20  Land Value Holdings, LLC v. Miller CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAND VALUE HOLDINGS, LLC,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>PEGGY MILLER et al.,<br><br>        Defendants, Cross-complainants and Respondents. | A153992<br><br>(Alameda County<br>Super. Ct. No. RG13681342) |

Land Value Holdings, LLC (LVH)[1] appeals from a judgment in a partition action regarding a residential property in Berkeley, California; related attorney fees orders; and an order disbursing fees and costs.  The dispute is over residential property owned by Richard Garrett until his death in 1987.  He bequeathed the property to his niece Clara Laguins for her life, and upon Laguins's death the property was to be divided among six other nieces and nephews of Richard Garrett.  Laguins died in 2009, and thereafter this litigation commenced between LVH and the descendants of Richard Garrett's six other nieces and nephews named in his will.  We affirm.

---

[1] LVH is a limited liability company which claimed an interest in the residential property and paid delinquent property taxes owed after the death of the holder of a life estate in the property.

1

We summarize the factual and procedural background as stated in the trial court's statement of decision, issued following a bench trial:

"Richard Garrett owned a single-family home . . . in Berkeley, CA (the 'Property'). On December 28, 1982 Richard Garrett executed a Last Will and Testament (the 'Will') in which he bequeathed the Property to his niece, Clara Laguins, for 'the term of her natural life.' The Will further provided that:

" 'Upon the death of CLARA LAGUINS, or if she should not survive me for sixty days then the Stuart Street property shall be divided equally among the following six nieces and nephews or to their surviving issues by right of representation:

" '1. Josephine H. Grissom of San Francisco, CA

" '2. Ernestine Gill of Newton, Kansas

" '3. Lillian McLean of Wichita, Kansas

" '4. Wesler Garrett of Washington, D.C.

" '5. Frank Garrett of Los Angeles, CA

" '6. Elworth Jeff Garrett of Wichita, Kansas' [¶] . . . [¶]

"Richard Garrett passed away on March 29, 1987.

"In or about January 28, 1993, an 'Order Settling First and Final Account of Executor, Allowing Executor's Commissions and Attorney Fees, and Judgment' (the 'Probate Order') was issued by this court confirming Clara Laguins' life estate and further ordering that '[t]he estate in the hands of the executor remaining for distribution consists of the [Property] to be distributed as follows: 'Remainder interest . . . to Josephine H. Grissom, Ernestine Gill, Lillian McLean, Wesler Garrett, Frank Garrett and Elworth Jeff Garrett in equal shares as tenants in common subject to a lien in favor of

2

Clara Laguins in the amount of $1,571.15 and lien in favor of Milton W. Cooper in the amount of $1,571.15 . . . .' The liens were 'payable only upon sale, refinancing, or other change in title of this property.' [Citation.] The Probate Order failed to include the phrase 'or to their surviving issues by right of representation' after naming each of the remaindermen listed in the Will, contrary to the terms of the Will. [¶] . . . [¶]

"In sum, at this time none of the original remaindermen are alive. Of the six original remaindermen named in the Will, only four of them—to wit, Josephine Grissom, Elweard (aka Elsworth) J. Garrett, Frank Garrett and Robert Wesley (aka Wesler) Garrett—had issue. Those currently living are all parties in this action.[2]

"Plaintiff LVH claims that the Property was scheduled to be sold for unpaid taxes at an auction in March of 2013. Plaintiff voluntarily paid the tax sum due on March 13, 2013. [Citation.] LVH instituted the instant action on May 29, 2013 seeking quiet title and ejectment, relying on the theory of adverse possession.

"In or about August and September 2015, LVH entered into settlement negotiations with certain descendants of Josephine Grissom and Elweard Garrett to wit, defendants Claude Dayton, Debra K. Robinson, Elyse C.

---

[2] The following living issue of the remaindermen were defendants: Cynthia McKnight (the only living issue of Robert Wesley Garrett); Frank Garrett III, Susan Smith Garrett and Peggy Miller (the living children of Frank Garrett); Peggy Garrett Harris, Constance Garrett, Marcus Garrett, Lisa Garrett Nevels, Keith Garrett and Gerry Garrett (the living grandchildren of Frank Garrett); Debra K. Robinson, Elweard Jess Garrett, Jr., Loretta Garrett Hyche, and Elyse C. Garrett (Elweard Garrett's children); Claude Dayton and Roberta Blackwell Crockett (the children of Josephine Grissom); and Jacqueline Cobb, Michael Cobb, Larry Evans and Terry Evans (the living grandchildren of Josephine Grissom). On appeal, only McKnight and Miller filed a respondent's brief.

Garrett, Loretta Hyche, and Elweard J. Garrett, Jr.  Pursuant to these negotiations, these defendants executed quitclaim deeds assigning their 'rights, titles, possession rights, and interest in' the Property to LVH. [Citations.]  Specifically, Claude Dayton entered into a Settlement Agreement with LVH wherein he agreed to assign his rights in the Property to LVH in exchange for $16,666.67 contingent upon the sale of the Property. [Citation.]  Roberta Crockett entered into a Settlement Agreement with LVH in which she assigned her rights to the Property in exchange for a guaranteed payment of $10,000.  She will receive an additional $6,670 upon certain conditions occurring, including LVH's recovery of attorneys' fees in this action.  [Citation.]  Debra Robinson, Elweard J. Garrett, Loretta Hyche and Elyse Garrett assigned their rights to the Property to LVH in exchange for $50,000 to be split equally among the four siblings or, $12,500 each, contingent upon sale of the Property.  [Citations.]

"In or about April, 2014 LVH entered into an Agreement with Harold Richards, alleged heir to Clara Laguins, assigning Ms. Laguins' $1,571.15 lien against the Property, to LVH for $1,000.  The payment to Mr. Richards is conditional upon LVH successfully collecting on the lien in this action. [Citation.] [¶] . . . [¶]

"Plaintiff [LVH] sues for Quiet Title, Declaratory Relief, and Partition in its Second Amended Complaint as 'the owner in fee simple of the Property against all adverse claims . . . .' [Citation.]  Cross-Complainant Peggy Miller also seeks Quiet Title and Partition.  [Fns. omitted.]" (*Sic*.)

The trial court found that the defendants, who were the living issue of the remaindermen of the Will, were entitled to an interest in the Property. The trial court's finding was based on "the plain language of the Will [which] specifies that the testator's intent was to bequeath his estate to his six nieces

4

and nephews or, to their surviving issue . . . ." (*Sic.*) The trial court further found that the Probate Order's omission of " 'or, to their surviving issues' " was "clear (and likely unintentional) error" and that "[b]ecause the intent of the testator, as set forth in the Will, is specific, clear and unambiguous it shall be given effect, notwithstanding the omission of the phrase 'or, to their surviving issues' in the Probate Order."

The trial court found LVH's assignments of rights and quitclaim deeds from certain defendants[3] to be valid and rejected defendants' claims that they were obtained by threats, fraud, misrepresentation or undue influence. The assignments provided LVH with a 41.66-percent ownership interest in the Property.

The trial court rejected LVH's claim that it was entitled to reimbursement of $31,582.92 it paid in back taxes, explaining:

"Plaintiff seeks reimbursement of $31,582.92 in back taxes it allegedly paid to maintain and preserve the Property. Defendants argue that title to the Property should be quieted without any setoff or obligation for reimbursement amounts LVH voluntarily paid in back taxes on the Property. The court agrees that LVH is not entitled to any setoff for back taxes it paid on the Property.

" 'The general rule is that a volunteer acquires no right whatsoever by the payment of taxes on the land of another.' [Citation.] Nonetheless, LVH argues that it is entitled to reimbursement on two grounds. First, it argues that it is entitled to reimbursement based on its lienholder status. The second ground for LVH's claim for reimbursement is based upon its

_____

[3] LVH obtained assignments and quitclaim deeds from Claude Dayton and Roberta Blackwell (the living issue of Josephine Grissom) and from Debra Robinson, Loretta Hyche, Elyse Garrett and Elweard J. Garrett, Jr. (the living issue of Elworth Jeff Garret aka Elweard Jess Garrett).

5

subsequently acquired co-tenant interest in the Property from Debra Robinson, Elweard J. Garrett, Jr., Loretta Hyche, Elyse Garrett, Claude Dayton, and Roberta Blackwell Crockett. The quitclaim deeds and Settlement Agreements apparently provide that the assignments and deeds are 'retroactive.' The court rejects both theories propounded by Plaintiff for recovery of taxes paid on the Property.

"The record does not support that LVH was a special lien holder compelled to satisfy a prior lien for its own protection per Civil Code section 2876. LVH claims it holds an assignment of Ms. Laguins' $1,571.15 lien on the Property. LVH claims this lien was assigned to it by two of her heirs, Harold Richards and Lucius Richards. However, there was no evidence introduced at trial, other than non-admissible hearsay contained in Exhibit 41, to support the claim that the Richards inherited this lien or that the lien remains unsatisfied. The court concludes that LVH has not established by a preponderance of the evidence that it holds a lien against the Property.

"Even assuming the assignment exists, it is not reasonable that LVH paid in excess of $31,000 to secure a $1,571.15 lien. LVH was not an owner when it voluntarily paid the property taxes so it was not protecting its ownership interest. LVH did not pay the taxes to protect the interests of the defendants in this case. To the contrary, the record supports that in this case LVH paid the back taxes in an attempt to obtain full title to the Property and deprive the legatees of their inheritance. Immediately upon paying the back taxes, LVH brought the instant action for quiet title and ejectment, relying on the theory of adverse possession. In its initial Complaint it did not assert any rights in the Property via the remaindermen. Instead, LVH asserted that the right to the Property of the remainderman 'and their testate and

6

intestate successors are dormant and abandoned.' [Citation.] The payment of back taxes was simply a means by which LVH attempted to obtain title to the Property and voluntary payment was a strategic risk it took. The authority cited by Plaintiff itself supports disfavoring Plaintiff's claim of equitable subrogation as the court does not find that Plaintiff was '[o]ne acting in good faith in making a payment and under a reasonable belief that it is necessary for [its] own protection . . . even though it may turn out that [it] in fact had no interest to protect.' [Citation.] The court declines to exercise its equitable powers in this instance in favor of LVH. [Citation.]" (*Sic.*)

On April 10, 2017, the trial court issued its interlocutory judgment of partition and order appointing referee ordering the referee to supervise the sale of the Property and ordering that the proceeds be divided among the parties according to their respective interests. On August 2, 2017, the trial court issued an order approving the referee's report and confirming sale of the Property for $663,000. In December 2017, the trial court issued orders granting in part each party's request for attorney fees, and it issued a final judgment on January 26, 2018, dividing the remaining proceeds of the sale among the parties and awarding attorney fees to each party, to be paid by the other parties according to their respective percentage interest in the Property.

After the final judgment issued, LVH filed a motion for additional attorney fees, which the trial court denied. Miller and McKnight filed an ex parte application to disburse certain fees and costs, which was granted. On appeal, LVH challenges certain findings in the statement of decision, the attorney fees orders, and the order permitting certain fees and costs to be disbursed to Miller and McKnight. LVH also asserts the trial court erred

7

when it ordered funds to be disbursed to the parties before payment of costs of sale and liens.  We affirm.

## DISCUSSION

**I.** ***Substantial evidence supports finding that LVH was a volunteer not entitled to reimbursement of the $31,582.92 tax payment made in March 2013.***

LVH argues it is entitled to reimbursement of the property taxes it paid on behalf of all tenants in common.  We review the trial court's factual determination that LVH was a volunteer at the time it paid the taxes under the substantial evidence standard, and " 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " (*Estate of Young* (2008) 160 Cal.App.4th 62, 75–76.)

LVH summarizes the facts as follows:  "[LVH], as a lien holder [citation] who later acquired ownership [citations], advanced the amount of $31,582.92 as full payment of the tax liability to protect its security interest and prevent the property from being sold at auction in March of 2013." LVH's factual summary suggests that it was a lienholder at the time it paid the taxes, but according to the allegations of LVH's own complaint, this is not true.  LVH alleges it paid the taxes in March 2013.  It was not until April 2014 that LVH allegedly contracted with Laguins's heirs for an assignment of Laguins's $1,571.15 lien on the Property.  The trial court rejected LVH's argument that it was a special lienholder that had acquired Laguins's $1,571.15 lien through an assignment from Harold Richards and Lucius Richards.  The trial court found "there was no evidence introduced at trial, other than non-admissible hearsay contained in Exhibit 41, to support the claim that the Richards [*sic*] inherited this lien or that the lien remains

8

unsatisfied.  The court concludes that LVH has not established by a preponderance of the evidence that it holds a lien against the Property."

Exhibit 41 is an agreement between LVH and Harold Richards regarding the $1,571.15 lien on the Property.  The agreement states Richards is one of the heirs of Laguins, that Richards "represents . . . Laguins was owed . . . $1,571.15" and that Richards assigns his "heir's rights" to LVH. LVH asserts the contents of exhibit 41 are an exception to the hearsay rule and that the trial court abused its discretion "insofar as it premised its decision on the exclusion of Exhibit 41 as hearsay . . . ."  LVH incorrectly states that Evidence Code section 1330 provides a hearsay exception for "a 'writing purporting to affect an interest in real or personal property.' "  The full text of Evidence Code section 1330 is:  "Evidence of a statement contained in a deed of conveyance or a will or other writing purporting to affect an interest in real or personal property is not made inadmissible by the hearsay rule if: [¶] (a) The matter stated was relevant to the purpose of the writing; [¶] (b) The matter stated would be relevant to an issue as to an interest in the property; and [¶] (c) The dealings with the property since the statement was made have not been inconsistent with the truth of the statement."  LVH ignores the subdivisions entirely and cites to no evidence presented at trial satisfying the requirements of the subdivisions.  LVH also incorrectly argues that exhibit 41 is admissible under Evidence Code section 1302 because it is "evidence of the 'liability, obligation, or duty of a third person . . . .' "  Again, LVH misreads the Evidence Code.  Section 1302 states: "When the liability, obligation, or duty of a third person is in issue in a civil action, evidence of a final judgment against that person is not made inadmissible by the hearsay rule when offered to prove such liability, obligation, or duty."  This section relates to "evidence of a final judgment

9

against [a third person]," which has no application here.  LVH has not established that the trial court erred by excluding hearsay evidence contained in exhibit 41.  Moreover, even if we agreed that the contents of exhibit 41 are not hearsay, LVH points to no evidence that it was a lienholder in March 2013, when it paid the property taxes.

LVH further argues it is entitled to reimbursement of the tax payment as a cotenant who paid a common debt for the benefit of the joint Property.  But again, LVH points to no evidence that it obtained the quitclaim deeds or assignments before it made the tax payment in 2013.  In 2015, LVH obtained quitclaim deeds from Claude Dayton, Elyse C. Garrett, Loretta Hyche, Debra K. Robinson, and Elweard J. Garrett, Jr., and by the time of trial in 2017, it had obtained an assignment from Roberta Blackwell Crockett, the daughter of Josephine H. Grissom.  LVH argues that "as a 41.66% owner of the property . . . [it] has a right to reimbursement of all funds advanced to protect the property."  It cites *Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035–1036, for the proposition that partition actions include a final accounting for charges and credits upon each cotenant's interest and that credits include expenditures in excess of the cotenant's fractional share for taxes, as well as expenditures paid by predecessors.  But here, there is no evidence any of LVH's predecessors made any expenditures.  LVH alleged the defendants had abandoned their interests in the Property and that LVH was the only party to pay taxes on the Property for over five years following Laguins's death in 2009.  The record supports the trial court's finding that at the time LVH paid the property taxes it was neither a lienholder nor an owner of the Property and, therefore, it acted as a volunteer.

10

**II.** *LVH fails to present cognizable legal argument supported by authority regarding trial court's alleged lack of authority to reinterpret Will.*

LVH argues the trial court lacked authority to "reinterpret" the Will of Richard Garrett. LVH appears to be contesting the trial court's determination that "the plain language of the Will specifies that the testator's intent was to bequeath his estate to his six nieces and nephews or, to their surviving issue and that the Probate Order signed on January 28, 1993, omitting from the bequest 'or, to their surviving issues' was clear (and likely unintentional) error." (*Sic.*) LVH's opening brief fails to present a cognizable legal argument with citations to supporting authority explaining why the trial court lacked authority to interpret the Will according to its plain language in an equitable action to quiet title, for declaratory relief and for partition.[4] We decline to consider LVH's unsupported argument. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"].)

---

[4] The only case LVH cites is this court's unpublished decision issued in LVH's prior appeal, from the denial of LVH's anti-SLAPP motion filed in response to Miller's cross-complaint. (*Miller v. Land Value Holdings, LLC* (Mar. 17, 2016, A145685).) LVH asserts this court "already opined on the probate order." Not so. The portion of this court's prior decision which LVH cites summarizes the allegations of LVH's complaint and specifically cautions: "This opinion's Background section is taken from the parties' pleadings and exhibits submitted in connection with appellant's anti-SLAPP motion. However, our decision should not be read and we express no opinion on the accuracy of the 'facts' as alleged in the pleadings." (*Id.* at p. 2, fn. 2.)

11

**III.** *Partial denial of LVH's first motion for attorney fees was not an abuse of discretion.*

LVH sought an award of $206,185.73 in attorney fees pursuant to Code of Civil Procedure sections 874.010 and 874.040[5] covering the period from March 19, 2013, to August 22, 2017.[6] The trial court awarded LVH $98,301, finding that fees and costs incurred as of April 22, 2016 (the date Miller and McKnight filed their second amended verified cross-complaint asserting a partition claim), were recoverable. The trial court declined to award fees incurred before April 22, 2016, because prior to that date no party had filed a claim for partition.[7]

LVH argues it should have been awarded all fees it sought because it worked for the common benefit of the parties beginning in May 2013. "We review the trial court's orders regarding attorney fees for abuse of discretion, and its 'decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice.'" (*Orien v. Lutz* (2017) 16 Cal.App.5th 957, 966.) Here, the trial court's order explains the relevant procedural history, including that LVH's original complaint filed in May 2013 alleged claims for quiet title and

---

[5] Further unspecified statutory references and citations are to the Code of Civil Procedure.

[6] Section 874.040 states that except as otherwise provided by statute, "the court shall apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable." Section 874.010, subdivision (a) states the costs of partition include "[r]easonable attorney's fees incurred or paid by a party for the common benefit."

[7] The trial court entered similar orders on the attorney fees motions filed by certain of the defendants, finding that fees incurred after Miller and McKnight filed their partition claim on April 22, 2016, were recoverable and should be apportioned among the parties in proportion to their interests.

ejectment and asserted a right to adverse possession based upon its payment of back taxes. LVH's first amended complaint alleged declaratory relief and " 'Money Had and Received,' " and it did not assert a partition claim until June 2016, when it filed its second amended complaint.[8] The trial court found that despite the positions taken in LVH's earlier pleadings, its fees incurred after the parties first pleaded or responded to a cause of action for partition were for the common benefit. Accordingly, LVH was awarded attorney fees incurred beginning in April 2016. This ruling is consistent with the trial court's rulings on the motions of the defendants who sought fees.

LVH cites *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281, for the proposition that a court " 'is not bound by the captions or labels of a cause of action in a pleading' " and argues that LVH's first amended complaint, which included a cause of action for declaratory relief, was "essentially a partition action . . . ." At issue in *Ananda Church of Self Realization* was the duty to defend under a third party liability policy. (*Ibid.*) The case did not involve partition claims or the right to attorney fees as costs of partition. LVH cites no case law in which attorney fees were awarded under section 874.010 for work performed before a cause of action for partition was asserted by any party. We are not persuaded by LVH's argument that its declaratory relief action asserted in its first amended complaint was essentially a partition action. LVH's first amended complaint was not filed until April 2014, but it seeks attorney fees as costs of partition from 2013 when it filed its original complaint for ejectment and quiet title under an adverse possession theory. The

---

[8] LVH added a partition claim to its second amended complaint which was filed in June 2016. Miller and McKnight added a partition claim to their second amended cross-complaint filed on April 22, 2016.

declaratory relief cause of action sought a declaration as to which parties are legally responsible for the failure to pay the property taxes and to keep the Property in insurable condition, which is not equivalent to the partition cause of action asserted in April 2016 by Miller and McKnight or in June 2016 by LVH seeking sale of the Property and division of the proceeds. We find no abuse of discretion in the trial court's determination that LVH's fees incurred prior to April 2016, a time period during which it sought ejectment, quiet title, declaratory relief, and " 'Money Had and Received' " from the defendants, were not recoverable as amounts incurred for the common benefit under section 874.010.

## IV. *Denial of certain LVH costs was not an abuse of discretion.*

In addition to awarding LVH $98,301.00 for attorney fees incurred beginning in April 2016, the trial court awarded LVH costs of $17,451.72 out of the $36,434.73 it sought. Miller and McKnight argued certain costs sought by LVH should be taxed because they were not reasonable and necessary, and the trial court taxed $18,983.01 in costs requested by LVH. The trial court issued a detailed order itemizing the 15 categories of costs challenged by Miller and McKnight and taxed costs for attorney service fees, attorney travel and lodging costs, court teleconference costs, court reporter per diem costs, parking fees, postage and mailing costs, printing and copying costs, superior court filing fees incurred before April 2016, transcript fees, and trial lodging for witnesses and counsel. Certain costs were taxed because the trial court found they were not reasonable and necessary or for the common benefit or they were for the convenience of counsel. Regarding attorney travel and lodging costs, the trial court found LVH opted to retain counsel from out of town, and therefore the costs were not reasonable and necessary. Regarding lodging for trial witnesses and counsel, the trial court stated it was inclined to award costs for the lodging of witnesses but was unable to do

14

so because LVH did not itemize these costs. LVH argues the taxed costs were reasonable and necessary to the litigation, but it fails to meet its burden to demonstrate an abuse of discretion. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [" 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power' "].) It was a reasonable exercise of discretion for the trial court to conclude that the contested costs were not incurred for the common benefit of the parties.

## V. *Trial court did not abuse discretion when it denied LVH's second motion for attorney fees.*

On March 29, 2018, following the trial court's January 26, 2018 judgment, LVH filed a second motion for attorney fees, seeking $27,269.00 for fees incurred from August 26, 2017, to January 26, 2018. The trial court denied the motion. LVH contends the trial court's failure to "meaningful[ly] consider[]" LVH's second motion was an abuse of discretion. Again, the trial court issued a detailed order explaining its basis for denying LVH's motion. First, the trial court summarized the history of the fees awards:

"On April 11, 2017, the Court issued a judgment that ordered the parties to file post-judgment motion for fees within 21 days of the sale of the property at issue (the 'Property'). The Property was sold on August 29, 2017. [Citation.]

". . . Miller and . . . McKnight ('Defendants') filed a motion for attorneys' fees and costs on August 17, 2017. [LVH] filed a motion to tax those costs on September 6, 2017. Both were set for hearing on November 7, 2017. The Court held that Defendants were entitled to attorneys fees they incurred as of

15

April 22, 2016, and that those fees should be apportioned among all the parties in proportion to their percentage interests in the Property.  [Citation.]

"[LVH] did not file a motion for its own fees and costs until November 13, 2017, along with a request for relief for the untimely filing under Code of Civil Procedure section 473 . . . .  [LVH] sought fees from the beginning of the matter through the 'conclusion of the matter (including trial), but not including fee motion and related opposition work,' which included fees up until August 22, 2017. . . .

"In the December 7, 2017 order, the Court granted [LVH's] attorneys fees and costs incurred as of April 22, 2016 onward that were identified as evaluating and responding to Defendants' cause of action for partition . . . .  The amount of fees awarded was $98,301.  [Citation.]

"With respect to Plaintiff's costs, the Court taxed Plaintiff's memorandum of costs in the amount of $18,983.01, and awarded $17,451.72 in costs.  [Citation.]  Together with attorneys' fees, the Court awarded Plaintiff $115,752.72 . . . .  The Court further held that the memorandum of costs and motion for attorney's fees was timely.  [Citation.]"  (*Sic.*)

The court found that LVH failed to demonstrate how the fees requested in its second attorney fees motion were "[r]easonable attorney's fees incurred or paid . . . for the common benefit" under section 874.010, subdivision (a), stating that it was only in LVH's untimely reply brief that it made any argument that the fees requested were for the common benefit of the parties. The trial court found that the additional fees incurred were only for LVH's benefit and not for the common benefit as required under section 874.010, subdivision (a).

On appeal, LVH argues the trial court abused its discretion by "refusing to consider [LVH's] second motion . . . while at the same time

16

awarding Respondents Miller, McKnight, and Garrett fees for a similar period." The trial court rejected this same argument below, explaining why LVH's request was decided differently as follows:

"[LVH's] main argument is one of equity, asserting that it should receive its fees up through judgment because Plaintiff believes that Defendants improperly received their fees through November 7, 2017. The Court finds that the circumstances are not the same. In Defendants' case, the Court held that Defendants were entitled to attorney's fees they incurred as of April 22, 2016 . . . . On December 7, 2017, the Court stated that counsel 'may provide to the court their calculation of the total amount of their fees and costs to be awarded in accordance with the court's orders.' [Citation.] Defendants supplemented their fee request with the underlying invoices dating up to the date of the November 7, 2017 hearing. [Citation.] The Court finds that the supplemental information was in accordance with the Court's order that Defendants receive attorneys fees incurred as of April 22, 2016 and up to November 7, 2017.

"[LVH] contends that it should receive its fees because it was not given an opportunity to object to or review the entries underlying Plaintiff's supplemental time entries, and had not been given an opportunity to present its own case for fees incurred in litigating the fee issues. However, [LVH] did object to Defendants' supplemental filings. [Citation.] Further, [LVH] had the opportunity to seek fees on fees through November 7, 2017 through its own fee motion, which was filed after November 7, 2017. It chose not to. . . ." (*Sic.*)

We find the trial court carefully considered LVH's second motion for attorney fees, and its order denying the motion was well within the trial court's discretion.

17

**VI.** *Orders awarding attorney fees to defendants were not an abuse of discretion.*

LVH contends the trial court abused its discretion in awarding attorney fees to the defendants. It argues the trial court failed to rule on specific objections LVH made in its motion to tax costs of Miller and McKnight and that Miller, McKnight, and the Garretts did not work for the common benefit.

The trial court partially granted LVH's motion to tax costs because it awarded the defendants only those fees incurred in the partition action as of April 22, 2016. LVH complains the trial court did not rule on its objections to individual billing entries contained in its 35-page attachment to its motion to tax costs. LVH cites to no authority requiring a court awarding attorney fees to provide a line-by-line analysis of billing statements. "Where a point is merely asserted . . . without any . . . authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court." (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.) Further, the fees approved by the court are presumed to be reasonable, and it is LVH's burden to show the trial court abused its discretion. (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556.) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" '—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

LVH fails to demonstrate an abuse of discretion. The trial court presided over a six-day bench trial in this multiparty litigation, which commenced in 2013 and as of April 2016 involved claims for partition. When presented with competing attorney fees motions, the trial court considered arguments from the parties as to whether the fees each party incurred were

18

for the common benefit under section 874.010. The defendants' motions included declarations and copies of their billing statements. The trial court determined that fees incurred prior to the assertion of a partition claim in April 2016 were not recoverable, but those incurred by all parties after April 2016 could be considered for the common benefit and were recoverable. LVH argues that certain of the defendants' fees were not for the common benefit because they sought to defeat the interest of other cotenants. But, it is well settled that litigation of disputed claims in a partition action does not preclude a finding of common benefit warranting an award of attorney fees under section 874.010. (*Orien v. Lutz*, *supra*, 16 Cal.App.5th at p. 966.)[9]

[9] LVH further argues the court erred by "award[ing] fees beyond those amounts originally specified in the costs memorandum by allowing Respondents to email the court with a supplemental fee spreadsheet in lieu of a form request or motion." Based on LVH cites to the declaration of Miller and McKnight's counsel attaching invoices from August 2017 to November 7, 2017 which were submitted to the trial court by email on December 14, 2017, we surmise that LVH contends these additional amounts should not have been awarded because they were submitted after Miller and McKnight filed their motion for attorney fees. LVH appears to misstate the record when it argues fees were awarded "without a motion or hearing" and without allowing LVH to "file formal objections . . . ." Following the hearings on November 7, 2017, and December 7, 2017, on the parties' motions for attorney fees, the trial court issued a case management order stating "counsel may provide to the court their calculation of the total amount of their respective attorney fees and costs to be awarded in accordance with the court's orders . . . ." On December 14, 2017, Miller and McKnight submitted additional invoices to the court for the period August, September, October and November 2017. LVH submitted objections on December 26, 2017, and Miller and McKnight replied, stating in part, "At the 12/7/17 hearing . . . the Court specifically stated that McKnight and Miller would be awarded fees through the date of its motion, on 11/7/17." The trial court's June 5, 2018 order on LVH's second motion for attorney fees confirms "the Court did allow for fees and costs incurred by Defendants up to the November 7, 2017 hearing." LVH has not demonstrated the trial court abused its discretion in awarding the defendants attorney fees.

19

**VII.** *LVH forfeited claim that judgment erroneously ordered disbursement of sale proceeds before deducting costs.*

LVH asserts the trial court erred because the final judgment does not state that the proceeds from the partition sale shall first be applied to the payment of the parties' respective attorney fees. Rather, the final judgment states each party's proportionate ownership interest in the Property and orders the referee to issue payments to the parties from the proceeds of sale in accordance with their ownership percentages. The judgment then states the amount of each party's attorney fees and costs award and orders those respective amounts to be paid by the other parties according to their respective percentage interests in the Property.[10]

Section 873.820 provides that: "The proceeds of sale for any property sold shall be applied in the following order: [¶] (a) Payment of the expenses of sale. [¶] (b) Payment of the other costs of partition in whole or in part or to secure any cost of partition later allowed. [¶] (c) Payment of any liens on the property in their order of priority except liens which under the terms of sale are to remain on the property . . . ." Section 874.010 provides that costs of partition include reasonable attorney fees and costs incurred for the common benefit.

LVH argues the distribution scheme is mandatory and cannot be modified. It cites no case authority supporting its statement. Instead, it explains that at the trial court's request, LVH provided a proposed judgment

---

[10] The judgment states LVH is awarded a total amount of $115,752.72 in attorney fees and costs, which is "apportioned among the parties and . . . payable to [LVH], according to their respective percentage interest [*sic*] in the Property . . . ." The judgment then lists each of the other parties' proportionate share to be paid to LVH for attorney fees and costs. The judgment provides a similar determination of the attorney fees and costs to be paid to McKnight and Miller, and to Susan Garrett and Frank Garrett, Jr.

20

directing the referee to disburse the proceeds with the attorney fees and costs " 'taken off the top,' " but the trial court then drafted its own judgment. LVH asserts the alleged error "led to chaos" and that it "will have to take additional steps to try to recover the gross payments made to the parties."

The record establishes that the referee disbursed the sale proceeds in accordance with the judgment and that most of the parties paid their respective portions of the other parties' attorney fees. LVH accepted these benefits of the judgment rather than promptly moving to modify or correct the judgment prior to distribution of the funds. We find that LVH has forfeited this alleged claim of error by failing to seek a cure in the trial court. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 378 ["A party may be deemed 'to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error' "].)

## VIII. *Order granting Miller and McKnight's ex parte application to disburse funds.*

On June 1, 2018, after LVH's notice of appeal was filed, McKnight and Miller filed an ex parte application to disburse funds pursuant to the judgment. McKnight and Miller sought to recover their portion of attorney fees and costs owed by Larry Evans and Terry Evans (defendants who did not appear at trial and whose portion of sale proceeds was held in the court's trust account), and by Peggy Harris, Constance Garrett, Marcus Garrett, and Lisa Nevels Garrett, who were all represented by attorney Alec Adams. Adams held his clients' portion of the attorney fees and costs in trust, and his clients consented to disburse the funds to McKnight and Miller, but LVH objected that no further payment should be made until the appeal is decided. LVH opposed the ex parte application on the grounds that the trial court had

21

no jurisdiction to rule on the application because the judgment was automatically stayed pending this appeal.

The trial court granted McKnight and Miller's application to order disbursement of the funds, finding that because LVH had not given an undertaking, the enforcement of the judgment was not stayed pending appeal. (§ 917.1, subd. (a)(1).) Section 917.1, subdivision (a) states: "Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for . . . : [¶] (1) Money or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action. . . ." Subdivision (d) states: "Costs awarded by the trial court under Chapter 6 (commencing with Section 1021) of Title 14 shall be included in the amount of the judgment or order for the purpose of applying paragraph (1) of subdivision (a) . . . . However, no undertaking shall be required pursuant to this section solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14." The trial court relied upon *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1432 (*Dowling*), which held that "a judgment for reasonable attorney fees and costs under the anti-SLAPP statute is unquestionably a judgment for payment of money" and is not stayed on appeal unless an undertaking is given.

LVH's argument is neither clear nor consistent. As best as we can determine, LVH argues that a portion of the judgment was automatically stayed even though it and the other parties have already received disbursements from the sale proceeds and most of the parties have made and received attorney fees payments pursuant to the judgment. LVH appears to have first raised the issue of a stay only in response to McKnight and Miller's

22

ex parte application, filed four months after the judgment was entered and after the parties received disbursements pursuant to the judgment.

LVH's brief ignores the trial court's discussion of *Dowling* and instead cites three cases finding that an appeal from a " 'costs only' judgment" is automatically stayed. As the trial court's order correctly states, "Here, the judgment does not consist of only costs and therefore an undertaking is still required." The cases LVH relies upon (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1546–1547; *Ziello v. Superior Court* (1999) 75 Cal.App.4th 651, 653–655; *Nielsen v. Stumbos* (1990) 226 Cal.App.3d 301, 304–305; *Quiles v. Parent* (2017) 10 Cal.App.5th 130, 140) are distinguishable because they involve situations where the appeal was limited to the award of attorney fees only, which is not the case here. We find no error.

## DISPOSITION

The judgment and orders are affirmed. Respondents shall recover their costs on appeal.

_____

Jackson, J.

WE CONCUR:

_____

Siggins, P. J.

_____

Petrou, J.

A153992/*Land Value Holdings, LLC v. Miller*